IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02564–CMA–KMT

MATTHEW MALLORY,

    Plaintiff,

v.

SUSAN JONES, in her individual capacity as warden of Centennial Correctional Facility (CCF),
PAMELA J. PLOUGHE, in her individual capacity as warden of Colorado Territorial Correctional Facility (CTCF),
ARISTEDES W. ZAVARAS, in his individual capacity as Executive Director of the Colorado Department of Corrections (CDOC),
CHERYL SMITH, in her individual capacity as Chief Medical Officer of CDOC,
JOANIE SHOEMAKER, in her individual capacity as the Director of Clinical Services for the CDOC,
DAVID LADEAU, in his individual capacity as correctional officer at CCF,
SERGEANT JOHNSTON, in his individual capacity as a sergeant at CCF,
LIEUTENANT CELLA, in his individual capacity as a supervising lieutenant at CCF,
SERGEANT PANEK, in his individual capacity as a sergeant officer at CCF,
DR. JOSEPH WRIGHT, in his individual capacity as a physician at CCF,
JOSI EDWARDS, in her individual capacity as a Licensed Practical Nurse (LPN) at CCF,
DR. WERMERS, in his individual capacity as a doctor at CCF,
NEARL LOUSBERG, in his individual capacity as a physician's assistant working in the CTCF's infirmary,
ROGER CISSEL, in his individual capacity as a Registered Nurse (RN) at CCF,
ASHLEY BANNALY, in his individual capacity as a RN at CCF, and
KATHLEEN ABEL, in her individual capacity as a RN at CCF,

    Defendants.

---

**ORDER**

This matter is before the court on Defendants' "Motion to Stay Discovery and for Protective Order." (Doc. No. 19 [Mot.], filed 1/20/2011). Defendants seek to stay all discovery pending a ruling on their Motion to Dismiss in which they assert the defense of qualified immunity. (*Id.* at ¶ 2.) Plaintiff filed a response opposing the stay (Doc. No. 26 [Resp.], filed 2/6/2011) and Defendants filed a reply (Doc. No. 29 [Reply], filed 2/23/2011). The motion is ripe for ruling.

## STATEMENT OF THE CASE

In this civil rights suit, Plaintiff asserts Eighth Amendment claims against all the Defendants for failure to provide adequate medical care while he was confined[1] at the Centennial Correctional Facility (CCF) and in the infirmary at the Colorado Territorial Correctional Facility (CTCF). (*See* Doc. No. 6 [Am. Compl.].)

Plaintiff states that he injured his back in a fall while confined at the Colorado State Penitentiary (CSP) in 2008. (*Id.* at ¶ 37.) He alleges that Defendants provided him with "copious amounts of non-steroid anti-inflammatory drugs (NSAIDs), including Naprosyn and Ibuprofen." (*Id.*) According to Plaintiff, the development of upper GI bleeds are a known and common possible side-effect from prolonged ingestion of NSAIDs. (*Id.* at ¶ 38.) On October 7, 2009, Plaintiff began vomiting blood in the middle of the night. (*Id.* at ¶ 4.) He states that he repeatedly vomited blood over the next seventy-two hours. (*Id.*) He alleges that he notified the appropriate correctional officers and members of the medical staff at CCF, but the Defendants

---

[1] Plaintiff is currently on parole. (Am. Compl. at 1.)

"failed to respond adequately or reasonably, disregarding the risk to his life." (*Id.*) Plaintiff asserts that after four days he was taken to the hospital where a massive gastrointestinal bleed was discovered. (*Id.* at ¶¶ 6-7.) He underwent emergency surgery and remained in the hospital for ten days. (*Id.* at ¶ 7.) Plaintiff claims that following his surgery, both hospital and CDOC doctors ordered a soft diet as part of his post-op treatment. He alleges that the diet was not provided at the infirmary at CTCF and his repeated requests for such a diet were ignored. (*Id.* at ¶¶ 8-9.)

The defendants include correctional and medical staff at CCF, as well as the warden of CCF, the warden of CTCF, the Executive Director of the Colorado Department of Corrections (CDOC), the Chief Medical Officer of the CDOC, and the Director of Clinical Services for the CDOC. Plaintiff sues all Defendants in their individual capacities. He alleges that the individuals who were "directly informed of his serous condition and deliberately disregarded his medical needs are responsible for his pain and near death." (*Id.* at ¶ 3.) He also claims that, due to a state audit, medical and custody supervisors knew that conditions such as Plaintiff's were not being handled properly but nevertheless failed to train staff and ensure that policies were followed. (*Id.*) Plaintiff alleges that by allowing inadequate practices to persist, these supervisors consciously disregarded a risk to those, like Plaintiff, within their care. (*Id.*) Plaintiff seeks a declaration that his constitutional rights were violated, compensatory and punitive damages, and attorney's fees. (*Id.* at 26.)

Defendants moved to dismiss Plaintiff's claims for failure to state a claim and for lack of subject matter jurisdiction. (*See* Doc. No. 12 at 2-3.) With regard to the supervisory defendants,

Defendants argue that Plaintiff has failed to allege personal participation. (*Id.* at 3.) With regard to the correctional staff defendants, Defendants argue that there are insufficient allegations of deliberate indifference to meet the subjective component of an Eighth Amendment claim. (*Id.* at 7.) Similarly, with regard to the medical staff defendants, Defendants argue that there are no allegations that any of the defendants had a culpable state of mind with respect to Plaintiff's medical needs and that, at most, Plaintiff's allegations suggest nothing more than negligence, which is not actionable under the Eighth Amendment. (*Id.* at 9-13.) Defendants argue that, because Plaintiff has failed to allege a constitutional violation against any defendant, all Defendants are entitled to qualified immunity. (*Id.* at 14.) Finally, Defendants argue that, because Plaintiff is no longer in CDOC custody, his request for declaratory relief is moot and the court lacks jurisdiction over that claim. (*Id.* at 15.) Defendants now move to stay discovery and for a protective order on the grounds that their assertion of qualified immunity entitles them to a stay pending a determination of their immunity. (Mot. at 2.)

## LEGAL STANDARD

Immunity provisions, whether qualified, absolute or pursuant to the Eleventh Amendment, are meant to free officials from the concerns of litigation, including avoidance of disruptive discovery. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (citing *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)); *see also Workman v. Jordan*, 958 F.2d 332, 335 (10th Cir.1992) (noting that qualified immunity, if successful, protects an official both from liability and the ordinary burdens of litigation, including

far-ranging discovery) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)).  As explained by the Court in *Iqbal*, there are serious and legitimate reasons for this protection:

> If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed.  Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.  The costs of diversion are only magnified when Government officials are charged with responding to [the burdens of litigation discovery].

*Id.* at 1953.

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. *See String Cheese Incident, LLC v. Stylus Shows, Inc.*, 02-CV-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. March 30, 2006) (unpublished).  Federal Rule of Civil Procedure 26 does, however, provide that

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed. R. Civ. P. 26(c).  Moreover, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*,  299 U.S. 248, 254-255 (1936) (citing *Kansas City S. Ry. Co. v. United*

*States*, 282 U.S. 760, 763 (1931)).  An order staying discovery is thus an appropriate exercise of this court's discretion.  *Id.*

Indeed, "a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved."  8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2040, at 198 (3d ed. 2010).  Although a stay of all discovery is generally disfavored, *see Bustos v. U.S.*, 257 F.R.D. 617, 623 (D. Colo. 2009), a stay may be appropriate if "resolution of a preliminary motion may dispose of the entire action" *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003). *See also Vivid Techs., Inc. v.. Am. Sci. & Eng'r, Inc.*, 200 F.3d 795, 804 (Fed. Cir.1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").  When considering a stay of discovery, this court has considered: 1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; 2) the burden on the defendants; 3) the convenience to the court; 4) the interests of persons not parties to the civil litigation; and 5) the public interest.  *See String Cheese Incident*, 2006 WL 894955, at *2.

## ANALYSIS

Plaintiff argues that the *String Cheese* factors weigh against a stay of discovery.  First, Plaintiff claims that he will be seriously prejudiced by any delay in the litigation.  He fears that the passage of time increases the likelihood that memories will fade, prejudicing Plaintiff's ability to prove his case.  (Resp. at 3.)  He also argues that he has alleged that Defendants seriously injured him—"so seriously that he required major surgery and intensive care

hospitalization and treatment." (*Id.* at 4.)  Plaintiff wants the Defendants expeditiously judged for their actions.  (*Id.*)  Plaintiff claims that his interest in proceeding expeditiously outweighs the burden on Defendants.  He insists that there is no burden on Defendants because qualified immunity does not apply because Defendants' success on the merits of their qualified immunity defense is not assured.  (*Id.* at 5 (citing *Sanaah v. Howell*, No. 08-cv-02117-REB-KLM, 2009 WL 980383, at *1. (D. Colo. Apr. 9, 2009).)

The court recognizes the possibility of some prejudice to Plaintiff if his case is delayed, however, this prejudice does not outweigh the burden on Defendants.  This case is unlike the case cited by Plaintiff, where the court's review of the motion to dismiss revealed that the qualified immunity defense was not particularly well developed or compelling on its face. *Sanaah*, 2009 WL 980383, at *1 n.1.  Here, Defendants argued in their Motion to Dismiss that Plaintiff failed to allege the facts necessary to make out a constitutional violation.  If the Court agrees, this would entitle them to qualified immunity.[2]  While the court expresses no opinion about the merits of Defendants' Motion to Dismiss, the court considers that Defendants have made a colorable argument.  Because qualified immunity is meant to free a defendant from the burdens of litigation, allowing discovery to proceed would necessarily burden the Defendants as the defense would be lost.

---

[2] Determination of the qualified immunity defense on a dispositive motion involves a two-pronged inquiry: whether the facts that the plaintiff has alleged or shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Herrera v. City of Albuquerque,* 589 F.3d 1064, 1070 (10th Cir. 2009)

Proceeding on the assumption that Defendants' assertion of qualified immunity fails, Plaintiff argues that the court has an interest in managing its docket by seeing the case proceed expeditiously and that rescheduling the case may interfere with the court's predictable docket management. (Resp. at 5.)  In contrast, Defendants argue that a stay of discovery is the best means of conserving judicial resources pending a ruling on the dispositive motion. (Reply at ¶ 7.)  The court finds that any inconvenience in rescheduling the docket is outweighed by the potential waste of judicial resources if discovery proceeds only to have the case dismissed on qualified immunity grounds.

Finally the parties argue about the interests of non-parties and the public.  Plaintiff contends that other prisoners have an interest in Plaintiff's case because, as a result of the litigation, Defendants and other CDOC officials might change their policies and practices to avoid harm to other prisoners in the future. (Resp. at 5-6.)  Plaintiff also argues that the public has an interest in holding officials accountable for constitutional violations and ensuring that prisons do not subject prisoners to cruel and unusual punishment. (*Id.* at 6.)  Defendants note the public interest in the efficient and secure operations of its prisons and emphasize that the central purpose of qualified immunity is to protect officials from interference with their duties. (Reply at 5.)  The court finds these factors also weigh in favor of a stay.

Balancing the five *String Cheese* factors, the court finds that a stay of discovery is appropriate in this case.  Therefore, it is

**ORDERED** that Defendants' "Motion to Stay Discovery and for Protective Order" (Doc. No. 19) is **GRANTED**.  All discovery in this matter is hereby **STAYED** pending ruling on

Defendants' Motion to Dismiss. The deadlines set in the "Scheduling Order" (Doc. No. 17) are VACATED. The parties shall file a joint status report within ten days of a ruling on the pending motion to dismiss to advise if the deadlines should be reset.

Dated this 6th day of April, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

9