**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-02564-CMA-KMT

MATTHEW MALLORY,

Plaintiff,

v.

SUSAN JONES, in her individual capacity as warden of Centennial Correctional Facility (CCF),
PAMELA J. PLOUGHE, in her individual capacity as warden of Colorado Territorial Correctional Facility (CTCF),
ARISTEDES W. ZAVARAS, in his individual capacity as Executive Director of the Colorado Department of Corrections (CDOC),
CHERYL SMITH, in her individual capacity as Chief Medical Officer of CDOC,
JOANIE SHOEMAKER, in her individual capacity as the Director of Clinical Services for the CDOC,
DAVID LADEAU, in his individual capacity as correctional officer at CCF,
SERGEANT JOHNSTON, in his individual capacity as a sergeant at CCF,
LIEUTENANT CELLA, in his individual capacity as a supervising lieutenant at CCF,
SERGEANT PANEK, in his individual capacity as a sergeant officer at CCF,
DR. JOSEPH WRIGHT, in his individual capacity as a physician at CCF,
JOSI EDWARDS, in her individual capacity as a Licensed Practical Nurse (LPN) at CCF,
DR. WERMERS, in his individual capacity as a doctor at CCF,
NEAL LOUSBERG, in his individual capacity as a physician's assistant working in the CTCF's infirmary,
ROGER CISSEL, in his individual capacity as a Registered Nurse (RN) at CCF,
ASHLEY BANNALY, in his individual capacity as a RN at CCF, and
KATHLEEN ABEL, in her individual capacity as a RN at CCF,

Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

---

This matter is before the Court on the above-captioned Defendants' Motion to Dismiss.  For the reasons discussed below, the Motion is granted in part and denied in part.

## I.  **BACKGROUND**[1]

Plaintiff, Matthew Mallory, is currently on parole.  This matter arises from Defendants' alleged failure to provide Plaintiff adequate medical care and properly monitor the use of non-steroid anti-inflammatory drugs ("NSAIDs"), which can cause ulcers and gastrointestinal bleeds, while he was incarcerated at Centennial Correctional Facility ("CCF") and in the Colorado Territorial Correctional Facility ("CTCF") infirmary.

In the fall of 2008, Plaintiff injured his back; Defendants treated Plaintiff's back pain with "copious amounts" of NSAIDs for a period of six months.  Sometime after going to bed on October 7, 2009, Plaintiff awoke and began to vomit profuse amounts of dark vomit, which contained blood.  Plaintiff notified Defendant Lieutenant Cella of his condition.  Lieutenant Cella attempted to contact the on-call health provider, Defendant Dr. Wermers, but informed Plaintiff that no one would be coming and that Dr. Wermers advised him to have Plaintiff place a washcloth on his head.

The next day, on October 8, Plaintiff continued to vomit blood.  Plaintiff asked for medical care, but was told that he must first submit a kite in order to receive any medical attention.  Despite Plaintiff's submission of a kite concerning his urgent medical

---

[1]   Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint (Doc. # 6).

situation, and even though three nurses, Defendants Josi Edwards ("Nurse Edwards"),

Roger Cissel ("Nurse Cissel"), and Ashley Benally ("Nurse Benally"), and a doctor,

Defendant Dr. Joseph Wright, worked at the facility that day, Plaintiff was never

examined and no one followed up with Plaintiff concerning his kite submission.  Plaintiff

continued to vomit blood that night.  Despite his additional pleas for help, Plaintiff was

told that no one from the medical staff was available and that he would not be seen until

the next day.

On October 9, after nearly two days of vomiting blood, Defendant Nurse Edwards

went to check on Plaintiff in his cell block.  Nurse Edwards did not conduct a physical

examination of Plaintiff; rather, she simply spoke to him through a small opening in the

steel pod door of his cell.  Plaintiff informed Nurse Edwards that he was vomiting blood

and had pains in his stomach.  Even though Nurse Edwards confirmed with security that

blood was present in Plaintiff's vomit and noted that Plaintiff was pale and his turgor

was poor, Nurse Edwards did not take Plaintiff to the emergency unit at the facility or

have him examined in the pod's medical room.  Based on Plaintiff's statements and her

observations, Nurse Edwards suspected that Plaintiff might have the swine flu,

prescribed Phenergan, an anti-nausea drug, and instructed Plaintiff to increase his fluid

intake and be on a clear liquid diet.  However, Nurse Edwards did not perform any tests

to confirm her swine flu diagnosis, and Plaintiff did not exhibit a majority of the

symptoms associated with swine flu.  Moreover, Plaintiff's main symptom, vomiting

blood, is not a symptom associated with swine flu.  At no time did Nurse Edwards

follow-up with Plaintiff to see if his condition had improved.  However, Nurse Edwards's

October 9 treatment notes indicate that she notified Dr. Wright of Plaintiff's condition.

Despite notification from Nurse Edwards of Plaintiff's condition, Defendant

Dr. Wright did not examine Plaintiff, send him to emergency care, or enter different

treatment orders.  Additionally, despite Nurse Edwards's notations in Plaintiff's medical

file, Defendants Nurse Cissel and Nurse Kathy Abel ("Nurse Abel"), both of whom were

on duty the afternoon of October 9, failed to follow-up on Defendant Nurse Edwards's

diagnosis or Plaintiff's condition.

Also on October 9, a prisoner in a cell near to Plaintiff's notified Defendants

Sergeant Johnston, Sergeant Panek, and Officer Ladeau that Plaintiff was very sick and

needed help.  Nevertheless, these three Defendants did not check on Plaintiff's

condition or retrieve a medical staff member.

On October 10, after nearly three days, Plaintiff's condition did not improve, it

worsened; Plaintiff was weak to the point of immobility and he continued to vomit blood

throughout the day.  Nevertheless, no Defendant, including Nurse Cissel, who was on

duty that day, made any attempt to reassess Plaintiff's diagnosis or to provide further

treatment.  At some point that day, Nurse Abel, while doing a standard medication pass

noted in Plaintiff's file that he appeared pale.  In response to Nurse Abel's query as

to how he felt, Plaintiff stated that he was okay, in frustration and resignation over

Defendants' continued inaction.

By the morning of October 11, Plaintiff's condition worsened; he could not get up without passing out and he sought permission to have a neighboring prisoner deliver his food tray.  In response to Plaintiff's request, Defendant Officer Ladeau, who, by this time had knowledge of Plaintiff's vomiting blood, refused to assist Plaintiff, told Plaintiff that he would have to get his own food if he wanted to eat, and stated, "This place isn't like Burger King where you can have it your way."  At 10:59 a.m., Plaintiff lost consciousness and collapsed upon his attempt to retrieve his lunch.

Soon after Plaintiff's collapsing, Defendant Nurse Edwards and another nurse, Buffy Stotler, who is not a named Defendant, attempted to check Plaintiff's vital signs. Nurse Edwards noted that Plaintiff was "very pale" and his pulse was "weak and thready."  Neither nurse could detect Plaintiff's blood pressure.  At that point, the oxygen saturation of Plaintiff's blood was 86%.[2]  Despite these signs, Defendants did not immediately call an ambulance; they directed Plaintiff to wait in his cell.  Plaintiff collapsed a second time while attempting to return to his cell.  Finally, Defendants transported Plaintiff to the prison's medical center, where Plaintiff intravenously received a normal saline solution.  While waiting for the ambulance to arrive, Plaintiff was unable to sustain consciousness.

Upon arrival at St. Thomas Moore Hospital, Plaintiff's body temperature was 95.6 degrees Fahrenheit, three degrees below normal, and his hemoglobin level was 4.7

---

[2]   As alleged in the Complaint, an oxygen saturation below 90% signifies that the brain and other organs are not receiving enough oxygen to function properly.

grams of hemoglobin per deciliter of blood, 8.8 grams of hemoglobin per deciliter lower than what is considered a "low" hemoglobin count for men.  Additionally, Plaintiff's Hematocrit Blood (Hct) level was 13.5%, between 28.4% and 40.4% lower than the average Hct level of an adult male.  Due to the severity of Plaintiff's condition, which exceeded St. Thomas Moore Hospital's capabilities, Plaintiff was transported to a second hospital, St. Mary Corwin.  By the time Plaintiff arrived at St. Mary Corwin Hospital, he had received two blood transfusions.  A surgeon discovered that Plaintiff had a large clot in the posterior duodenal bulb with a large ulcer.  In the intensive care unit ("ICU"), Plaintiff received two more blood transfusions and four more units of blood were ordered.  Ultimately, Plaintiff was diagnosed with a massive upper gastrointestinal bleed secondary to a duodenal ulcer that was 2 ½ centimeters or about the size of a quarter, profound anemia, and hypovolemic seizures.

Although Plaintiff was temporarily stabilized in the ICU, on October 12, he suffered acute bleeding, became unstable, and had a seizure.  Plaintiff continued to vomit large volumes of blood.  Doctors ended up suctioning approximately 700 cubic centimeters of blood from Plaintiff's stomach.  In a one-hour span, Plaintiff lost approximately 1,000 cubic centimeters of blood, which loss required additional transfusions.  In the operating room, a surgeon discovered that Plaintiff's stomach was "markedly distended . . . his gallbladder [was] stuck over the top of the duodenum."  Plaintiff's ulcer had advanced to such a critical stage that the surgeon suspected that "the ulcer was probably perforated into the wall of the gallbladder."

6

After surgery, Plaintiff's doctors placed him on a liquid diet, which was slowly advanced to a soft diet.  A soft diet was necessary to prevent the occurrence of a bowel obstruction or perforation, which could require additional surgery or even cause death. Despite doctor's orders, upon Plaintiff's release from the hospital and return to the infirmary, the infirmary staff refused Plaintiff's requests for a soft diet over a span of at least five days and eighteen meals.

As a result of Defendants' (in)actions, Plaintiff filed a complaint on October 20, 2010 (Doc. # 1), and he amended the complaint ("Complaint") on December 7, 2010 (Doc. # 6).  Plaintiff asserts a single claim of relief against all Defendants under 42 U.S.C. § 1983 for an Eighth Amendment violation arising from Defendants' failure to provide adequate medical treatment.  Plaintiff complains that he continues to suffer "effects from these incidents," including an eight-inch scar down his abdomen, which serves as a "permanent, daily reminder of the surgery that was made necessary by the defendants' failure to provide him with timely, adequate medical care."

On January 4, 2011, Defendants filed the instant Motion to Dismiss.  (Doc. # 12.) Plaintiff responded on February 1, 2011.  (Doc. # 24.)  Defendants replied on February 25, 2011 (Doc. # 30).

## II.  STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "accept[s] all the well-pleaded allegations of the complaint as true" and "construe[s] them in the light most favorable to the plaintiff."  *David v. City & County of Denver*,

101 F.3d 1344, 1352 (10th Cir. 1996).  The Court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that" the alleged claim might have occurred.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation and quotation marks omitted).  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.

In evaluating the plausibility of a given claim, the Court "need not accept conclusory allegations" without supporting factual averments.  *S. Disposal, Inc., v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.

### III.  ANALYSIS

### A.   EIGHTH AMENDMENT VIOLATION CLAIM AGAINST NON-SUPERVISORY DEFENDANTS

In support of his Eighth Amendment violation claim, Plaintiff alleges that the Non-Supervisory Defendants[3] violated Plaintiff's right to be free from cruel and unusual

---

[3]   For purposes of this Order, the term, "Non-Supervisory Defendants" refers to: David Ladeau, Sergeant Johnston, Lieutenant Cella, Sergeant Panek, Dr. Joseph Wright, Josi Edwards, Dr. Wermers, Neal Lousberg, Roger Cissel, Ashley Bannaly, and Kathleen Abel.

punishment by failing to provide him with adequate medical treatment, and by failing to properly test, diagnose, and treat Plaintiff when he experienced a serious and obvious medical emergency.  Plaintiff further asserts that, as a result of Defendants' failure to provide him with proper medical treatment, he has suffered damages, injuries, pain and suffering, inconvenience, emotional distress, impairment of quality of life, past and future economic losses, and reasonable and necessary medical, hospital, and other expenses.

In response, Defendants state, even assuming they were aware of Plaintiff's medical condition, "there is no factual allegation that would show that any failure to provide care was the result of deliberate indifference, rather than mere negligence." (Doc. # 12 at 7.)  For the reasons discussed below, the Court finds this is true with respect to some, but not all, of Defendants.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments."  U.S. CONST. Amend. VIII.  The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials. *Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir. 2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once

9

prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted).

The elementary principles of dignity, civility, humanity, and decency "establish the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  In the worst cases, such a failure may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the [Eighth] Amendment.  In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose."  *Id.* at 103 (internal quotation and citation omitted).

An Eighth Amendment claim for deliberate indifference involves "a two-pronged inquiry, comprised of an objective component and a subjective component."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  With respect to the objective component, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted).  The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious.  *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005).

Under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted); *see also Self*, 439 F.3d at 1230-31.  In other words, the plaintiff must establish that the defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal citation and quotation omitted).  "Unlike the objective component, the symptoms displayed by the prisoner are relevant to the subjective component of deliberate indifference.  The question is: 'were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?'" *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753).  "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition.  Even a brief delay may be unconstitutional."  *Mata*, 427 F.3d at 755; *see also Dougherty v. Kansas*, No. 08-3066, 2008 WL 2906505, at *3 (D. Kan. July 24, 2008) (unpublished) ("a delay in providing medical care does not violate the Eighth Amendment unless the plaintiff has suffered 'substantial harm' from the delay"; lifelong handicap, permanent loss, or considerable pain amounts to substantial harm).  "[P]rison officials who 'actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'"  *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008) (quoting *Farmer*, 511 U.S. at 844-45).  "An official responds to a known risk in an objectively

unreasonable manner if he knew of ways to reduce the harm but knowingly or recklessly declined to act." *Howard*, 534 F.3d at 1239-40 (citation and modification omitted).

    1.    <u>Defendants Nurse Roger Cissel and Nurse Ashley Bannaly</u>

At the outset, the Court notes that, in his Response, Plaintiff concedes that, as pled in the Complaint, an insufficient basis exists for the Court to exercise personal jurisdiction over Defendants Nurse Roger Cissel and Nurse Ashley Bannaly, in their individual capacities.  Plaintiff asks the Court to dismiss, without prejudice, these Defendants from the action.  (Doc. # 24 at 24.)  The Court will grant Plaintiff's request, and Defendants Cissel and Bannaly will be dismissed, without prejudice.

    2.    <u>Defendants Sergeant Johnston, Sergeant Panek, and David Ladeau</u>

In his Complaint, Plaintiff alleges that Defendants Johnston, Panek, and Ladeau, as CCF correctional officers during Plaintiff's incarceration, were responsible for Plaintiff's custody, care, and safety and for "implementing crisis intervention."  (Doc. # 6, ¶¶ 16, 17, 19).  Plaintiff further alleges that, on October 9 (Plaintiff's second full day of vomiting blood), a prisoner in a nearby cell informed Sergeant Johnston, Sergeant Panek, and Officer Ladeau that Plaintiff was very sick and needed help, to which one of these Defendants informed the fellow prisoner that the situation was not the prisoner's problem and the prisoner's complaining was disrupting the facility.  Neither Ladeau nor any of the other Defendants took any action at that time.  (*Id.*, ¶ 90.)

Defendant Ladeau again received notice of Plaintiff's condition two days later, on October 11, when a neighboring inmate informed him that Plaintiff could not get up without fainting and needed assistance to retrieve his lunch. (*Id.*, ¶ 99.) At this point, Plaintiff had been vomiting for more than three full days. Despite having received direct and prior notice of Plaintiff's condition, Defendant Ladeau disregarded the severity of the situation, went to Plaintiff's cell, mocked Plaintiff, and refused to provide or obtain any form of assistance, leaving Plaintiff with no choice but to attempt to retrieve his own food, whereupon Plaintiff collapsed and lost consciousness. (*Id.*, ¶¶ 99-101.)

Defendants assert that Plaintiff's "allegations indicate that as a result of his condition, [Plaintiff] was evaluated by a medical professional," and "[o]nce the matter was referred to medical personnel, the matter was out of Ladeau's hands." (Doc. # 12 at 8). Defendants further assert that, as a corrections officer, Ladeau was entitled to rely on the diagnoses and responses provided by the medical professionals. (*Id.*)[4] The Court disagrees.

Plaintiff's allegations against Defendants Johnston, Panek, and Ladeau essentially amount to allegations against gatekeepers who delayed or prevented an inmate from obtaining medical treatment. As with some of the defendants in *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), these Defendants knew that Plaintiff was in distress but, nevertheless, failed to obtain proper and adequate assistance, or even make any

---

[4] In support, Defendants cite to *Ellison v. Scheipe*, 570 F. Supp. 1361, 1363 (E.D. Pa. 1983) for the proposition that they cannot be required to second guess a physician's medical judgment. However, the *Ellison* court also stated that prison officials are "expected to bring to the physician's attention any injuries or illnesses suffered by inmates." *Id.* at 1363.

13

effort to ascertain Plaintiff's condition.  This alleged inaction is well beyond the bounds

of negligence; the alleged refusal to assist further delayed Plaintiff's ability to obtain

adequate treatment and purportedly caused Plaintiff to suffer significant pain and

discomfort, which did not "serve any penological purpose."  *Estelle v. Gamble*, 429 U.S.

97, 103 (1976).

The Court finds that Plaintiff has adequately alleged that Defendants Johnston,

Panek, and Ladeau disregarded a substantial risk to Plaintiff's health.  That Plaintiff

received medical treatment before or after these Defendants were notified of Plaintiff's

condition has no bearing on whether they were deliberately indifferent to Plaintiff's

condition <u>at the time</u> they refused to assist Plaintiff.  *See Mata*, 427 F.3d at 756 (finding

irrelevant the fact that the plaintiff received treatment hours after a defendant refused to

help because the inquiry rests on the defendant's deliberate indifference "at the time"

the defendant denies treatment); *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55

(6th Cir. 1991) (stating that a prisoner's needless suffering from pain when relief was

available was sufficient to show deliberate indifference) (cited in *Mata*, 427 F.3d at 756).

Accordingly, the Court finds that Plaintiff has stated an Eighth Amendment claim

against Defendants Johnston, Panek, and Ladeau for denial of medical treatment;

denial of Defendants' Motion to Dismiss Plaintiff's claims against these Defendants

is warranted.

3.   <u>Defendant Lieutenant Cella</u>

In his Complaint, Plaintiff alleges that Defendant Lieutenant Cella was responsible for Plaintiff's custody, care, and safety and for "implementing crisis intervention," and for supervising other officers assigned to his command.  (Doc. # 6, ¶ 18).  Plaintiff further alleges that, on October 7, 2009, Plaintiff, upon realization that his vomit was full of blood, "promptly notified Lieutenant Cella," who then purportedly contacted the offsite on-call health care provider, Defendant Dr. Wermers, but was advised that no one would come to evaluate Plaintiff and that Plaintiff should just put a washcloth on his head.  (*Id.*, ¶¶ 49, 53, 55.)

As previously noted, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or **one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention**." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (quotation and citation omitted) (emphasis added).  In support of their Motion to Dismiss, Defendants assert that the Complaint contains "no allegations that Cella ignored [Plaintiff's] condition or failed to contact a medical provider."  (Doc. # 12 at 9.)  However, Defendants entirely fail to address the reasonableness of Defendant Cella's actions (*i.e.* relying upon instructions that Plaintiff should place a washcloth on his head) in the face of the obvious severity of Plaintiff's condition (*i.e.*, vomiting blood).  Construing the allegations in the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged an Eighth Amendment claim against Defendant Cella.  According to Plaintiff's

allegations, Defendant Cella knew that Plaintiff faced a substantial risk of harm and disregarded that risk.  Defendant Cella failed to take reasonable measures to abate the substantial risk of harm Plaintiff faced (*i.e.*, extreme blood loss, if not death). Accordingly, the Court finds that denial of Defendants' Motion to Dismiss Plaintiff's claims against him is warranted.

      4.   <u>Dr. Joseph Wright</u>

In his Complaint, Plaintiff alleges that Defendant Dr. Joseph Wright, as a Colorado Department of Corrections ("CDOC") doctor during Plaintiff's incarceration, was responsible for ensuring that Plaintiff received adequate routine and emergency medical care and for guaranteeing the provision of necessary on-call assessment, diagnosis, and treatment of inmates in CCF.  (Doc. # 6, ¶ 20.)  Plaintiff further alleges that, on October 8, (approaching Plaintiff's first full day of vomiting blood), Dr. Wright was at CCF treating inmates during the morning and afternoon, but he did not visit Plaintiff.  (*Id.*, ¶ 64.)  As currently alleged in the Complaint, Dr. Wright's knowledge of Plaintiff's condition on October 8, is unclear.  Further, even though Dr. Wright learned from Defendant Nurse Edwards, on October 9, that Plaintiff was ill,[5] Dr. Wright's knowledge that Plaintiff was vomiting blood is also unclear from Plaintiff's allegations, because Nurse Edwards diagnosed Plaintiff with swine flu and prescribed treatment suitable to that illness.

---

    [5]  (*Id.*, ¶ 85) (stating that Nurse Edwards "indicate[d] that follow-up was required when she noted in [Plaintiff's] medical records on October 9th that, 'provider notified of findings, new orders to follow . . . T.O. Dr. Wright.'").

In support of their Motion to Dismiss the claim against Defendant Dr. Joseph

Wright, Defendants point to the paucity of allegations concerning Dr. Wright's

knowledge of Plaintiff's true condition.  (Doc. # 12 at 10.)  The Court agrees that

Plaintiff's allegations are deficient.  Plaintiff has failed to allege facts that would render

plausible that Dr. Wright knew Plaintiff faced a substantial risk of harm and disregarded

that risk.  To the extent that Nurse Edwards noted that Plaintiff required follow-up

treatment and Dr. Wright failed to provide that follow-up treatment, such conduct could

only give rise to a claim for negligence; such conduct does not meet the high bar of

a claim for deliberate indifference to a serious medical need in violation of the Eighth

Amendment.

Accordingly, the Court finds that dismissal, without prejudice, of Plaintiff's claim

against Defendant Dr. Wright is warranted.

5.      Nurse Josi Edwards

In his Complaint, Plaintiff alleges that Defendant Nurse Josi Edwards, as a

licensed practical nurse ("LPN") at CCF during Plaintiff's incarceration, was responsible

for providing Plaintiff with adequate medical care, including emergency health

assessment and intervention.  (Doc. # 6, ¶ 21.)  Plaintiff also alleges that, during Nurse

Edwards's shift from 5:30 a.m. to 1:30 p.m., on October 8, she failed to check on him

or follow-up on a kite Plaintiff had submitted concerning his condition.  (*Id.*, ¶ 65.)[6]

Additionally, on October 9, Nurse Edwards failed to take Plaintiff to the facility's

_____

[6]   The Complaint is bereft of any allegations as to whom Plaintiff submitted the kite.

17

emergency unit and incorrectly diagnosed Plaintiff with swine flu, even though Plaintiff

told her he had been vomiting blood, Nurse Edwards had confirmed this information

with security, and she noticed that Plaintiff was pale and his turgor was poor.  (*Id.*,

¶¶ 71, 72.)  Further, Plaintiff alleges in a conclusory fashion, "[i]t is apparent that LPN

Edwards was aware that [Plaintiff] could be suffering from an upper gastrointestinal

bleed resulting from an ulcer, which is a common negative side effect of prolonged

intake of NSAIDs, because she advised him to 'stop Motrin and Naprosyn.'"  (*Id.*, ¶ 82.)

In support of their Motion to Dismiss the claims against Defendant Nurse

Edwards, Defendants aver that, if anything, these allegations are indicative of a medical

malpractice claim and that Plaintiff has not alleged any facts that render plausible Nurse

Edwards's deliberate disregard for Plaintiff's condition.  The Court agrees.  As alleged,

Nurse Edwards (wrongly) believed that Plaintiff had swine flu and prescribed Plaintiff a

course of treatment to deal with the (incorrect) diagnosis.  Although Plaintiff's symptoms

did not match the diagnosis, Nurse Edwards's conduct, as alleged, does not rise to the

level of an Eighth Amendment violation; at most, her conduct sounds in tort, whether

as negligence, gross negligence, or malpractice.  *See Mata v. Saiz*, 427 F.3d at 759

(affirming lower court's grant of summary judgment in a defendant's favor on an Eighth

Amendment claim where the defendant misread the EKG results as normal).  As stated

by the Tenth Circuit, "[a] negligent failure to provide adequate medical care, even one

constituting medical malpractice . . . [or] a prisoner who merely disagrees with a

diagnosis or a prescribed course of treatment does not state a constitutional violation."

*Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (internal citation

omitted).  Additionally, "deliberate indifference" requires a "higher degree of fault than

negligence, or even gross negligence[7]."  *Barrie v. Grand County, Utah*, 119 F.3d 862,

869 (10th Cir. 1997) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 & n.7 (1989));

*see also Campbell v. Milyard*, No. 09-cv-01041, 2010 WL 5110096, at * 5 (D. Colo. Oct.

15, 2010) (unpublished) (citing *Medina v. City & County of Denver*, 960 F.2d 1493, 1500

(10th Cir. 1992) ("[N]egligence and gross negligence do not give rise to section 1983

liability.")), *aff'd and adopted*, 2010 WL 5102993 (D. Colo. Dec. 8, 2010) (unpublished).

Accordingly, the Court finds that dismissal, without prejudice, of Plaintiff's claim

against Defendant Edwards is warranted.

6.   Dr. Wermers

In his Complaint, Plaintiff alleges that Defendant Dr. Wermers, as a physician

employed by CDOC during Plaintiff's incarceration, was responsible for providing

Plaintiff with adequate routine and emergency medical care and for the on-call

assessment, diagnosis, and treatment of prisoners in CCF.  (Doc. # 6, ¶ 22.)  Plaintiff

further alleges that Dr. Wermers was the on-call health provider on the night of October

7, when Lieutenant Cella called for medical assistance on Plaintiff's behalf.  (*Id.*, ¶ 54.)

Plaintiff asserts that he notified Lieutenant Cella that his vomit was full of blood.  (*Id.*,

¶ 49.)  Lieutenant Cella informed Plaintiff that he had notified Dr. Wermers who, in turn,

---

[7] "Gross negligence" is "1. A lack of slight diligence or care.  2. A conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages."  BLACK'S LAW DICTIONARY  1134 (9th ed. 2009).

19

told Plaintiff to put a washcloth on his head.  (*Id.*, ¶¶ 53-55.)  Construing these

allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated

an actionable claim for an Eighth Amendment violation against Dr. Wermers.  Plaintiff's

allegations render plausible that Dr. Wermers learned of Plaintiff's serious medical

condition upon receipt of Lieutenant Cella's phone call and exhibited deliberate

indifference to the severity of Plaintiff's condition by suggesting an insignificant remedy.

Accordingly, the Court finds that denial of Defendants' Motion to Dismiss

Plaintiff's claim against Dr. Wermers is warranted.

7.    Neal Lousberg

In his Complaint, Plaintiff alleges that Neal Lousberg, as a physician's assistant

employed by the Colorado State Penitentiary and working at the CTCF infirmary during

Plaintiff's incarceration, was responsible for providing inmates with adequate routine

medical care and treatment.  (Doc. # 6, ¶ 23.)  Plaintiff further alleges that, on October

25, approximately two weeks after Plaintiff's surgery for a duodenal ulcer, Plaintiff

complained to Defendant Lousberg about being denied a soft food diet that was

recommended for his post-surgery recovery[8] and informed Defendant Lousberg that he

was only able to eat a small amount of his meals; the food was very painful for him to

digest.  (*Id.*, ¶ 153.)  Even though Defendant Lousberg confirmed that Plaintiff was

supposed to receive a soft diet, he failed to ensure that Plaintiff received soft foods.

---

[8]   According to the Complaint, Plaintiff's doctors ordered him to eat soft foods during
his recovery period to prevent the occurrence of a bowel obstruction or perforation, which could
require additional surgery or even cause death.  (Doc. # 6, ¶ 147.)

(*Id.*, ¶ 154.)  Plaintiff ended up receiving a total of eighteen meals that were painful to digest.  (*Id.*, ¶¶151, 157.)

The Court construes the allegations in the light most favorable to Plaintiff and finds that Plaintiff has stated a plausible claim for an Eighth Amendment violation against Defendant Lousberg in connection with his disregard for the risk Plaintiff faced if he did not receive a soft foods diet during his period of recovery from gastrointestinal surgery.  *See Hunt v. Uphoff*, 199 F.3d 1220, 1223-24 (10th Cir. 1999) (reversing lower court's dismissal of the plaintiff's Eighth Amendment claim arising from various conduct, including refusal to provide a medically necessary diet).  Accordingly, the Court finds that denial of Defendants' Motion to Dismiss in connection with Plaintiff's claim against Defendant Lousberg is warranted.

8.   Kathleen Abel

In his Complaint, Plaintiff alleges that Defendant Abel, as a Registered Nurse at CCF during Plaintiff's incarceration, was responsible for providing inmates with adequate medical care, including emergency health assessment and intervention. (Doc. # 6, ¶ 26.)  Plaintiff further alleges that even though Abel worked the afternoon and evening shift on October 9, Nurse Abel never assessed Plaintiff's condition, despite Nurse Edwards's October 9th notation in his file.  (*Id.*, ¶ 89.)  Additionally, on October 10, while doing a standard medication pass, Nurse Abel asked Plaintiff how he was doing.  Even though Plaintiff was pale, he informed Nurse Abel that he was doing okay. (*Id.*, ¶ 94.)

21

Even upon construing these allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff's claims against Defendant Abel are akin to those allegations against Defendants Roger Cissel and Ashley Bannaly, which the Court has dismissed without prejudice.  Plaintiff has failed to allege that Defendant Abel had any knowledge as to the severity of Plaintiff's condition; as alleged, Defendant Abel knew that Plaintiff was pale, but Plaintiff said he was okay.  Even if one would assume that Defendant Abel reviewed Plaintiff's file and saw Nurse Edwards's swine flu diagnosis and notation concerning Plaintiff's vomiting blood, Plaintiff's allegations do not rise to the level of a constitutional claim; rather, they are akin to Plaintiff's claims against Defendant Nurse Edwards and sound in negligence.  Accordingly, the Court finds that dismissal, without prejudice, of Plaintiff's claim against Defendant Abel is warranted.

**B.   EIGHTH AMENDMENT VIOLATION CLAIM AGAINST SUPERVISORY DEFENDANTS (SUSAN JONES, PAMELA J. PLOUGHE, ARISTEDES W. ZAVARAS, CHERYL SMITH, AND JOANIE SHOEMAKER)**

In his Complaint, Plaintiff lodges various allegations against Susan Jones, in her individual capacity as warden of CCF; Aristedes Zavaras, in his individual capacity as Executive Director of the CDOC; Cheryl Smith, in her individual capacity as the CDOC's Chief Medical Officer; and Joanie Shoemaker, in her individual capacity as the Director of Clinical Services (the "Supervisory Defendants").  Plaintiff's allegations against the Supervisory Defendants can be summarized, as follows: as supervisors, these Defendants are responsible for the custody and care of all inmates, oversee all CCF

employees, and have authority for the establishment and implementation of all policies
and procedures at that institution.

Plaintiff's allegations against the Supervisory Defendants also arise from a 2005
audit of CDOC's Internal Health Care, which uncovered quality-of-care concerns,
including evidence of missed opportunities to provide care, failures to provide proper
medication and monitoring, and excessive and inappropriate use of NSAIDs, which can
directly result in gastrointestinal bleeds, as suffered by Plaintiff.  (Doc. # 6, ¶¶ 29, 30,
31.)  Plaintiff alleges that, after he suffered a back injury during the fall of 2008, he was
prescribed "copious amounts of NSAIDs," for six months, causing him to develop an
ulcer and internal bleeding, which he suffered in October 2009.  Plaintiff lays blame
on the Supervisory Defendants in connection with his inability to receive timely and
appropriate medical treatment by alleging that the Supervisory Defendants were on
notice of the CDOC's health care deficiencies and practice of over-prescribing NSAIDs,
but failed to monitor properly the situation and their medical staff.  In particular, Plaintiff
alleges that the Supervisory Defendants "received the report" and were "responsible for
such oversight."  (*Id.*, ¶ 34; *see also id.*, ¶ 41) ("Although [the Supervisory Defendants]
had been warned that the Department's health care was not being adequately managed
and that multiple inmates had suffered from GI bleeds after taking NSAIDs, they failed
to properly monitor the health care providers under their management to ensure they
were appropriately prescribing these medications and monitoring recipients of these
medications for adverse side effects.").  Plaintiff further alleges that if the Supervisory

Defendants had performed adequately their jobs and enforced existing medical care policies, he would have received timely and appropriate medical care, and the Supervisory Defendants' failure to perform adequately their jobs amounted to deliberate indifference.  (*Id.*, ¶ 110.)

In support of their Motion to Dismiss, Defendants contend that Plaintiff fails to allege sufficient personal participation by the Supervisory Defendants and fails to allege that these individuals were even aware of Plaintiff's specific health issues or acted with a culpable state of mind concerning Plaintiff's needs.  (Doc. # 12 at 5, 7.)  For the reasons discussed below, the Court disagrees.

"A plaintiff may [   ] succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."[9]  *Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (clarifying impact of *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) on claims for supervisory liability under § 1983); *see also Davis v. City of Aurora*, 705 F. Supp. 2d

---

[9]  These three prongs are not necessarily distinct, but often intertwined.  *Dodds*, 614 F.3d at 1199 n.8.  However, with respect to the "state of mind" prong, "'the plaintiff must establish a deliberate, intentional act' on the part of the defendant 'to violate [the plaintiff's legal] rights.'" *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010) (quoting *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006)).  A plaintiff can satisfy this prong by establishing that the defendant-supervisor had knowledge of the violation and acquiesced in its continuance. *Dodds*, 614 F.3d at 1195; *see also Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (stating that the plaintiff must allege that the defendants knew she "faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measure to abate it.") (citation omitted).

1243, 1263-64 (D. Colo. 2010) ("[T]he establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's 'affirmative link' to the constitutional violation. . . . [W]here an official with policymaking authority creates, actively endorses, or implements a policy which is constitutionally infirm, that official may face personal liability for the violations which result from the policy's application"); *Tafoya v. Salazar*, 516 F.3d 912, 919 (10th Cir. 2008) ("The knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference.").  The evidence of an affirmative link may take various forms: the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001).  "A plaintiff may also establish an affirmative link where the supervisor tacitly authorized the offending acts."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006) (internal quotation and citation omitted).

In the instant case, the Court finds that Plaintiff has alleged facts that set forth an affirmative link between the Supervisory Defendants and the alleged Eighth Amendment violation.  Plaintiff has alleged that each of the Supervisory Defendants were notified of CDOC's excessive use of NSAIDs and failure to ensure the adequate monitoring of prisoners for NSAID-induced side effects such as ulcers and gastrointestinal bleeding, from which Plaintiff suffered.  Plaintiff further alleges that, despite knowledge of these problems, the Supervisory Defendants did not take

adequate remedial action within the CCF and, as a result, Defendants disregarded Plaintiff's serious medical condition and medical needs.

Accordingly, the Court finds that denial of Defendants' Motion to Dismiss Plaintiff's claim against the Supervisory Defendants is warranted.

## C.   QUALIFIED IMMUNITY

Government officials performing discretionary functions are protected from individual liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To defeat a qualified immunity defense, a plaintiff must satisfy two steps: first, establish that the defendant violated a constitutional or statutory right; and second, establish that the right was clearly established in the law at the time of the violation. *PETA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1207 (10th Cir. 2002). The Court may exercise its discretion in determining which prong of the qualified immunity test to address first. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

In the instant case, it is well-established that deliberate indifference to an inmate's serious medical need is a clearly established violation of the Eighth Amendment, and Defendants do not contend otherwise.  As previously discussed, the Court finds that Plaintiff has failed to allege a constitutional violation against Defendants Dr. Joseph Wright, Josi Edwards, and Kathleen Abel, but adequately alleged an Eighth Amendment violation against Defendants Sergeant Johnson, Sergeant Panek, David

Ladeau, Lieutenant Cella, Dr. Wermers, Neal Lousberg, Susan Jones, Pamela J.

Ploughe, Aristedes W. Zavaras, Cheryl Smith, and Joanie Shoemaker. Accordingly, the

Court finds that only Defendants Dr. Joseph Wright, Josi Edwards, and Kathleen Abel

are entitled to qualified immunity.

D.     REQUEST FOR DECLARATORY RELIEF

As set forth in the Complaint, Plaintiff seeks a declaration that he "has been

deprived by Defendants of his right to be free form [sic] cruel and unusual punishment in

violation and contravention of the Eighth Amendment to the United States Constitution."

(Doc. # 6 at 26.)

As Defendants correctly assert in their Motion to Dismiss, Plaintiff's request for

declaratory relief is moot because Plaintiff has been released on parole. (Doc. # 12

at 15.) It is well-established that once an inmate is released from prison, "the entry

of a declaratory judgment in [the inmate's] favor would amount to nothing more than a

declaration that he was wronged, and would have no effect on the defendant's behavior

towards him." *Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (cited in

*Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004)); *see also McAlpine v.*

*Thompson*, 187 F.3d 1213, 1217 (10th Cir. 1999) (affirming dismissal of declaratory

judgment action where the inmate plaintiff was on supervised release); *Cox v. Phelps*

*Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (stating, a "plaintiff cannot maintain

a declaratory or injunctive action unless he or she can demonstrate a good chance of

being likewise injured by the defendant in the future.") (citation omitted). In contrast,

an inmate's release does not render moot a damages claim because "judgment for damages in [the inmate's] favor would alter the defendants' behavior by forcing them to pay an amount of money they otherwise would not have paid." *Wirsching*, 360 F.3d at 1196.

Accordingly, the Court finds that Plaintiff's release on parole moots his request for declaratory relief.

## IV.  **CONCLUSION**

Accordingly, IT IS ORDERED THAT:

(1)     Plaintiff's claim against Defendants Roger Cissel and Ashley Bennaly are DISMISSED WITHOUT PREJUDICE and, therefore, Defendants Cissel and Bennaly are DISMISSED from this action;

(2)     Defendants' Motion to Dismiss (Doc. # 12) is DENIED IN PART with respect to Plaintiff's claim against: Defendants Sergeant Johnson, Sergeant Panek, David Ladeau, Lieutenant Cella, Dr. Wermers, Neal Lousberg, Susan Jones, Pamela J. Ploughe, Aristedes W. Zavaras, Cheryl Smith, and Joanie Shoemaker;

(3)     Defendants' Motion to Dismiss (Doc. # 12) is GRANTED IN PART with respect to Plaintiff's claim against: Defendants Dr. Joseph Wright, Josi Edwards, and Kathleen Abel and, therefore, Plaintiff's claims against these individuals are DISMISSED WITHOUT PREJUDICE and these individuals are DISMISSED from this action; and

(4)     Plaintiff's release on parole renders moot his request for declaratory relief.

DATED:  May __03__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge